

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MPR:EMR
F. #2018R02300

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 12, 2019

<u>By Hand and ECF</u>

Honorable Ramon E. Reyes
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Sefton Wright
>       <u>Criminal Docket No. 19-MC-720</u>

Dear Judge Reyes:

        The government respectfully submits this letter to request a permanent order of detention with respect to the defendant Sefton Wright. For the reasons set forth below, the government submits that the defendant cannot overcome the presumption that he is both a flight risk and a danger to the community, and no combination of conditions can secure his appearance at trial and the safety of the community.

I.    <u>Background</u>

    A.    <u>The Charges</u>

        The Federal Bureau of Investigation ("FBI") has been investigating criminal activity occurring in and around the Flatbush neighborhood of Brooklyn, New York. The defendant is a known member of a gang known as the Eight Trey Cowboy Crips, which is part of that investigation. The Eight Trey Cowboy Crips have been responsible for several assaults and shootings within the 67th and 70th precincts of the New York City Police Department.

        On or about July 23, 2019, the defendant Sefton Wright and a group of several other members of the Eight Trey Cowboy Crips violently kicked, punched and stabbed a rival gang member in the vicinity of 68 Saint Paul's Place in Brooklyn, New York, and the defendant stole an iPhone from the victim's person. The victim suffered multiple injuries, including stab wounds, as a result of the robbery.

        Video surveillance footage from the vicinity of 68 Saint Paul's Place captured the entire attack and robbery, including the defendant punching the victim multiple times,

pulling the victim back to prevent him from running away, throwing the victim onto the ground, and kicking and stomping the victim. Towards the end of the attack, the video captured the defendant leaning over the victim, who was laying on the ground, and taking a cellular telephone-sized object from the victim's person. Although the victim tried to hold on to the object, the defendant wrestled it out of the victim's hand and placed the object in his pocket. Shortly after the defendant took the object, the defendant and the other males stopped the attack and walked away.

Officers from the New York Police Department arrested the defendant on August 7, 2019. Following his arrest, the defendant was informed of his Miranda rights, and he agreed to waive those rights and speak to law enforcement. He admitted to his participation in the July 23, 2019 attack, and he admitted that during the attack he forcibly stole the victim's iPhone from the victim's person and placed it in his pocket.

B.     The Defendant's Criminal History

The defendant has four prior criminal convictions and is currently on New York State Parole. In January 2019, the defendant was convicted of Attempted Possession of a Forged Instrument in the Second Degree, in violation of New York Penal Law Section 110/170.25, and Grand Larceny in the Fourth Degree, in violation of New York State Penal Law Section 155.30. He was sentenced to a period of eighteen months to three years' incarceration on those cases. The defendant committed the instant robbery while on parole in those cases.

The defendant also has a prior Robbery in the Third Degree conviction, in violation of New York State Penal Law Section 160.05, from September 2016. In addition, he has a prior misdemeanor Petit Larceny conviction from March 2017.

The defendant has sustained bench warrants in every one of his prior criminal cases. Although the charge was ultimately consolidated with another case, in January 2019, the defendant was also charged with felony bail jumping.

II.     Legal Standard and Procedure

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e).

While a finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the

community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Four factors guide the Court's determination of whether a defendant should be released on bail:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., Mercedes, 254 F.3d at 437 ("Roman has twice been convicted of weapon possession— one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.").

III.  Argument

A.  The Defendant Poses a Danger to the Community

No bail package will protect the community from the danger posed by the defendant. The defendant and several fellow gang members violently assaulted a rival gang member in the middle of a public sidewalk. The defendant was captured on video punching the victim, throwing him to the ground, kicking and stomping him, and stealing his iPhone.

The brazenness of the defendant's conduct reveals his disregard for the law and the well-being of others. That is why the Second Circuit has repeatedly rejected elaborate bail packages for violent defendants, even ones that include "home detention and electronic monitoring," which the Court has explained try to "replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendant] that [he] will obey the conditions." United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993) (citation and internal quotation marks omitted).

B.    The Defendant Poses a Risk of Flight

The defendant also poses a significant risk of flight given his extensive history of disobeying conditions of release. Not only is the defendant currently on New York State parole for a conviction he sustained as recently as January 2019, but he has had multiple bench warrants issued. Indeed, the defendant has failed to return to court and sustained a bench warrant in every single one of his criminal cases.

When the incentive to flee is so strong, no combinations of sureties and other restrictions can assure a defendant's appearance. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant was charged under § 924(c), faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (summary order) ("[T]he presumption regarding flight risk has changed because Becton now faces a ten-year mandatory minimum sentence."). That remains true even if the defendant accepts electronic surveillance and home confinement. See United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted).

IV.    Conclusion

          For the foregoing reasons, the government respectfully requests that the Court
issue a permanent order of detention against the defendant.


                              Respectfully submitted,

                              RICHARD P. DONOGHUE
                              United States Attorney

                    By:    /s/   Erin Reid_____
                              Erin Reid
                              Assistant U.S. Attorney
                              (718) 254-6361


cc:    Defense Counsel (by hand and ECF)
          Clerk of Court (by ECF)